# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| SANTANGELO VINCENT, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. 17-00110-CG-B |
| | * | |
| JEFFERSON DUNN, *et al.*, | * | |
| | * | |
| Defendants. | * | |

## REPORT AND RECOMMENDATION

Plaintiff Santangelo Vincent, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. (Doc. 1). This action has been referred to the undersigned Magistrate Judge for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). After careful review, it is recommended that summary judgment should be **GRANTED** in favor of Defendants Grantt Culliver, Warden Cynthia Stewart, Warden Terry Raybon, Warden Mitchell, Lieutenant Ashley Kidd, Officer Gary Scarborough, Officer Timothy Vignolo, Nurse Ashley Wall, and Nurse Jonathan Langford, and that the claims against them should be **dismissed** with prejudice.

It is further recommended that the claims of excessive force, failure to protect, and assault and battery proceed against Defendants McQuirter, Fountain, Bullard, Smith, J. Pryor, J. Staniford, S. Terry, D. Whitley, D. Dennis, J.

Griffin, B. Walker, Duren, W. Streeter, Arthur, J. Baldwin, Lewis, Fleeton, Harrison, Robinson, Snelson, Brown, Edmund, Parker, J. Wilson, Knight, Mixon.

In addition, Plaintiff is hereby placed on **NOTICE** by the filing of this Report and Recommendation of the Court's **intention to recommend the granting of summary judgment for Defendants Jefferson Dunn and Captain Darryl Fails**, who have not been served with and/or answered Plaintiff's complaint to date.

## I. Summary of Factual Allegations.

### a. Complaint.

Plaintiff Vincent alleges that members of the Alabama Department of Corrections Emergency Response Team ("CERT Team") used excessive force against him on November 9, 2016, when the CERT Team entered B-Dorm (or Bravo Unit) at approximately 6:30 a.m. and immediately began harassing and assaulting inmates.[1]  (Doc. 1 at 5).   In his complaint, Vincent specifically details:

> I was asleep in my bed until I hear a lot of noise coming from the front of the dorm I hear a lot of cursing, screaming they're telling get the fuck

---

[1]   Vincent claims the CERT Team made "statements like: 'Where the GD's, Crips and Bloods at now', 'Aryan Brotherhood and Nations where yall at', 'on C.E.R.T. We will beat your Ass', 'Yall Bitches and Fuck Niggers stood up the other day Standup now' . . . 'Yall stabbed Warden Davenport and Killed Officer Bettis, pull something out now on C.E.R.T. we will beat your Ass.'"  (Doc. 1 at 5-6).

down.   I raise my head up and see numerous Cert
team members dressed in riot gear.   My first
instinct was to lay back down face down, hands
behind my back and cross my legs.  While I did this
I hear inmates screaming in agony please stop, I
didn't do anything.  They made their way to my bed
I was punched, slapped, hit with sticks and called
bitches and etc.  I was hit in the side with sticks,
across my head like 2 times and my cut partner was
beat[en] unmercifully to the point where he wasn't
even moving I seen out the corner of my eyes.   I
hear officers stating "this is what happens when
you go against the cert!"  Ya'll wanna pull knives
out of officers?  People were beat so bad . . . .
When I was placed in the plastic restraints that's
when it got worse, I felt feet being applied to my
leg area up my spine it hurt so badly I could hardly
breathe!  I feared for my life later that day we
were denied medical assistance and told to fill
sick call. . . . Tried to speak to the nurse about
a body chart [but] Captain Fails denied that also.

(Id. at 6).

Plaintiff Vincent alleges that the force used on
November 9, 2016, was in response to a previous incident that
occurred on November 7, 2016.  According to Vincent, on
November 7, 2016, members of the CERT Team, as well as other
correctional officers, including Officer Scarborough, entered
B-Dorm to conduct an institutional count of the inmates.  (Id.
at 5).  On that date, inmates had placed "makeshift tents" on
their beds to "gain some space from the inmate he shares the
5'x6' living area with", and officers ordered inmates to
remove the tents.  (Id.).  Vincent claims that although the
inmates removed the tents, one of the CERT Team members
"aggressively" broke a stick from inmate Quandarian Falkner's

3

bed, which "resulted in a reaction from the C.E.R.T. Members, Correctional Officers present and the Inmates, after a brief stillness, the count was conducted and the C.E.R.T. TEAM Members and Count Team exited the dorm." (Id.). Vincent explains:

> Approximately two days later on November 9, 2016, . . . over 50 members of the Alabama Department of Corrections C.E.R.T. Team, entered Bravo Unit armed with their Riot Gear (helmets with face shields, neck collar, body vest, shields, arms and legs gear), and shotguns, knives, mace and sticks, while at least One-Hundred (100) of the One-Hundred and Fourteen (114), inmates assigned to Bravo Unit was sound asleep, and immediately assaulted the inmates like they were animals, without provocation, because the majority of the inmates were harmlessly asleep, after about 35 to 45 minutes of assaulting the inmates, the C.E.R.T. Team members, placed plastic restraining tyes [sic] on the inmates to lay face down on their beds while other C.E.R.T. Team members was parading up and down Bravo Unit still assaulting and harassing the inmates. . . .

(Id.).

Plaintiff Vincent is suing Alabama Department of Corrections Commissioner Jefferson Dunn, Associate Commissioner Grantt Culliver, Warden Cynthia Stewart, Warden Terry Raybon, Warden Phillip Mitchell, Captain Darryl Fails, Lieutenant Ashley Kidd, Officer Gary Scarborough, Officer Timothy Vignolo, Nurses Ashley Wall and Justin Langford, and CERT Team Officers McQuirter, Fountain, Bullard, Smith, J. Pryor, J. Staniford, S. Terry, D. Whitley, D. Dennis, J.

Griffin, B. Walker, Duren, W. Streeter, Arthur, J. Baldwin, Lewis, Fleeton, Harrison, Robinson, Snelson, Brown, Edmund, Parker, J. Wilson, Knight, and Mixon.[2] (<u>Id.</u> at 9-15). Vincent seeks punitive damages against each defendant in the amount of $150,000.00, declaratory and injunctive relief, and "any other relief as the law and this Court deem just." (<u>Id.</u> at 17).

###### b. Defendants' Answers and Special Reports.

Defendants Grantt Culliver, Cynthia Stewart, Terry Raybon, Phillip Mitchell, Ashley Kidd, Gary Scarborough, Timothy Vignolo, Ashley Wall, and Justin Langford have answered the suit denying the allegations against them and have filed special reports in support of their positions.[3] (Docs. 11, 14, 21, 25, 30, 31).

---

[2]    Vincent also originally named as defendants in this action Alabama Department of Corrections Emergency Response Team, Nurse 1, Nurse 2, Nurse 3, Nurse 4, and Cubicle Officer assigned to Cubicle 1. (Doc. 1). These defendants, however, were terminated on April 13, 2017.

[3]    To date, Commissioner Jefferson Dunn and the named CERT Team officers, McQuirter, Fountain, Bullard, Smith, J. Pryor, J. Staniford, S. Terry, D. Whitley, D. Dennis, J. Griffin, B. Walker, Duren, W. Streeter, Arthur, J. Baldwin, Lewis, Fleeton, Harrison, Robinson, Snelson, Brown, Edmund, Parker, J. Wilson, Knight, and Mixon, have not been served with the complaint, and named defendant Darryl Fails has returned an executed waiver of service but has yet to answer the suit. (<u>See</u> Doc. 19). Correctional Sergeant DeJour Knight, who has not been served with or answered the suit has submitted an affidavit denying using any force on Vincent. (Doc. 31-16).

As part of their special report, Defendants have submitted the prison incident report regarding the force used on November 9, 2016, which describes events preceding the dormitory raid and expounds that the CERT Team entered B-Dorm with the purpose of seizing certain inmates.[4] The report states:

> On November 7, 2016, the Southern CERT members entered B-Dormitory and ordered all inmates to remove sticks and tied up blankets from their beds. The inmates refused to comply and became very hostile and aggressive toward the CERT members. The inmates gathered in a threatening and intimidating manner around the CERT members stating, "This is 2016, and we run this, slavery is over with, we already done killed one of y'all." Several unidentified inmates were observed with handmade knives in their possession. The CERT members were able to exit the dormitory without incident. The inmates with handmade knives were later identified by the CERT members through IMAS. On November 9, 2016, at approximately 6:35 a.m., the North Central, South Central, and Southern Team CERT Teams entered B-Dormitory to arrest the suspects. . . . The inmates were arrested and escorted to the health care unit for medical assessments. . . .

(Doc. 31-2 at 30-32). The CERT Team's November 9, 2016 search resulted in the confiscation of thirty (30) handmade knives, and twenty-one (21) inmates were transferred to segregation pending disciplinary actions for failing to obey a direct order, gathering in a threatening or intimidating manner, and

_____

[4]   In his complaint, Plaintiff Vincent describes similar facts occurring on November 7, 2016, which led to the November 9, 2016 incident. (See Doc. 1 at 5).

unauthorized possession of a weapon or device that could be used as a weapon. (Id. at 32).

The correctional officer defendants deny the allegations against them and claim that Vincent was not present during the November 9, 2016 incident in B-Dorm because he was assigned to C-Dorm, bed 41A, as evidenced by prison records. (Doc. 31 at 3; Doc. 31-3 at 2). The officer defendants further assert various immunity defenses.

The medical defendants deny the allegations against them and contend that Vincent never sought medical treatment for injuries occurring on November 9, 2016. (Docs. 14, 25).

**c. Plaintiff's Answers to Court's Interrogatories.**

To clarify the allegations in Vincent's complaint, the Court propounded questions to Vincent regarding his dorm and bed assignments and his location at the time of the November 7 and 9, 2016 incidents.[5] (Doc. 36).

In response to the Court's questions, Vincent acknowledged that he was formally assigned to C-Dorm, bed 41, a lower bunk, on November 7 and 9, 2016, but he asserted that he was present in B-Dorm, bed 27, on those dates. (Doc. 37 at 1). According to Vincent, bed 27 of B-Dorm is located on

_____

[5] The Court ordered Vincent to answer under the penalty of perjury and informed Vincent that his answers would be incorporated into his complaint. (Doc. 36).

the left-hand side of the dorm, in the back, three beds from the rear exit door. (Id.). Vincent maintains that Officer Brown (of the ICS Office) granted him permission to move from his assigned C-Dorm to B-Dorm, on the day that he was released from segregation in 2016. (Id.). Vincent avers that changing dorms is commonplace at Holman due to the known violence in the prison, and he further asserts that if an inmate fears for his safety in a certain dorm and informs an ICS officer of this fear, the officer "will politely assist your need to be moved to an available dorm for your safety & health!" (Id.). Vincent claims he expressed such fear of harm in C-Dorm to Officer Brown, and that Officer Brown verbally granted him permission to pick an open bed in B-Dorm. According to Vincent, Brown advised him that when he returned to the ICS office, he would update Vincent's name to the B-Dorm roster. (Id.).

Vincent asserts on the morning of November 7, 2016, the Southern Region CERT team officers entered B-Dorm to conduct a routine prison count. (Id.). He indicates that at that time, inmates had crafted "tents" (out of sheets, blankets, and sticks) over their beds to create privacy but would usually take the tents down for count and replace the tents once count was completed. (Id. at 1-2). On this day, however, the officers "clearly stated, 'Take down the sheets/blankets

until count is finished!'" (Id. at 2). Vincent explains that, as the officers approached the bed of inmate Quandarian Faulkner:

> Lt. Pacheco snapped a stick off the edge of the bed, which happened unexpectedly! The dorm usually is quiet while they count to help them focus and get it right the first attempt. The inmate was shocked by surprise and was put into a defense mode, then other CERT team members attempted to surround him. So due to past history of officers assaulting inmates they attempted to assist the fellow inmate from getting hurt or any trouble. That is when you had inmates who were "instigating" an incident and another crowd of inmates began flashing knives when the CERT team pulled out their batons. When the police seen they were outnumbered at that point they discontinued the routine count in (Bravo dorm) that morning and did not return that day. I was sitting on my bed like I was supposed to be doing and got caught up in a wrath of violence that I did not deserve at all! At no time did they say take the sticks down, cause that does not interfere with their count!

(Id.).

Vincent asserts that on November 9, 2016, when the CERT Team returned to B-Dorm, he was on his bed when he was hit with a baton on his upper back, left rib area, and lower legs near his ankles (and he sustained "minor bruises"). (Id. at 3). He further claims he was hit in the head with a fist (by more than one officer) before the dorm was searched. (Id.). According to Vincent, he was lying face down on his bed with his hands behind his back while officers walked the aisles of the dorm asking each inmate to lift his head to identify those

inmates involved in the November 7, 2016 incident. (Id.).
Vincent contends that when officers approached him, Warden
Streeter asked: "Was this one involved?" and the officers
stated, "I don't remember him!", yet he was still slapped in
the face by Officer Hadley or Sergeant Wilson (a "Caucasian"
officer). (Id.). Vincent further claims that he was "kicked
in his leg area and hit in [his] back [and] lost [his] wind
for a short moment" and then he "felt a foot or two on [his]
back. . . ." (Id.).

Additionally, Vincent asserts that his "cut partner",
inmate Gregory Sykes, who was assigned to bed 26, was involved
in the November 7, 2016 incident but refused to obey the
officers' directions to report to the front of the dorm when
his name was called, and this caused the CERT Team officers
to walk the aisles of the dorm to identify the inmates
involved in the November 7 incident. (Id. at 4). Vincent
alleges that once Gregory Sykes was identified, Sykes was
"kicked, punched, called names and etc. [and t]hat is when
[Vincent] feared [for his] life dearly!" (Id.). Vincent
states, "I thought that with me being so close to the incident
I would have gotten the same treatment. But mine was not as
bad." (Id.).

Vincent asserts that Officer Vignolo entered B-Dorm
following the incident and Vincent sought permission from him

to obtain a body chart for the sole purpose of documenting "the bruises" or "swellings" that were on his body. (Id. at 3-4). Officer Vignolo radioed the request in to Lt. Kidd, but Captain Fails interrupted the call and ordered that "no inmates [were] to be sent to the infirmary until [he gave] approval." (Id. at 4). Vincent was told he could put in a request for a sick call, but he opted not to do so because he did not want to pay the $4.00 copay for the visit. (Id.).

### d. Motion for Summary Judgment.

On January 16, 2019, after review of the pleadings, the Court ordered that Defendants' Answers, Special Reports, and exhibits (Docs. 11, 14, 21, 25, 30, 31) be treated as a motion for summary judgment. (Doc. 41). Plaintiff Vincent was cautioned regarding the consequences of the adjudication of the motion for summary judgment and informed of how to present additional evidence in opposition to the motion. He was further ordered to inform this Court in writing, by February 19, 2019, if he desired to continue litigating this action, and was warned that failure to respond would be considered abandonment of the case and that the motion for summary judgment would be treated as unopposed. On March 7, 2019, Vincent filed a motion for a sixty-day enlargement of time to respond to the motion for summary judgment. (Doc. 42). The Court granted Vincent a sixty-day extension (Doc. 43);

however, to date, Vincent has not filed a response in opposition to the motion for summary judgment. Accordingly, the motion for summary judgment is ripe for consideration.

**II. Motion for Summary Judgment and Legal Standard.**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if '*some* alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted).

The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. Garczynski, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to material facts.'" Id. (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. Id. In addition, "[t]here is no burden upon the

district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007); see also Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.").

## III. Analysis.

### A. Immunity Defenses.

To the extent Plaintiff is proceeding against the correctional officer Defendants in their official capacities, those claims fail. The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277

(11th Cir. 1998). "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." Id. (citing Kentucky v. Graham, 473 U.S. 159, 166-67 (1985)). Accordingly, the correctional officer defendants in this action, all of whom were employed by the State of Alabama Department of Corrections at the time of the incidents alleged in the complaint, are immune from suit in their official capacities. See Parker v. Williams, 862 F.2d 1471, 1476 n.4 (11th Cir. 1989) ("[S]uits against an official in his or her official capacity are suits against the entity the individual represents. . . ."), overruled on other grounds by Turquitt v. Jefferson Cnty., Ala., 137 F.3d 1285 (11th Cir. 1998). Thus, the officer Defendants, in their official capacities, are entitled to summary judgment as a matter of law.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). While there is no doubt that the Defendants in this action were acting within their

discretionary authority at all times when the acts in question occurred, the Eleventh Circuit has made clear that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in Hudson[ v. McMillian, 503 U.S. 1 (1992)] and Whitley[ v. Albers, 475 U.S. 312 (1986)]." Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002). As to the remaining claims, the officer Defendants are entitled to qualified immunity unless Vincent can show that their conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. See Belcher v. City of Foley, Ala., 30 F.3d 1390, 1395 (11th Cir. 1994). Therefore, the Court will now address whether or not this action asserts any such constitutional violation.

### B. Supervisory Liability.

Vincent has alleged that Defendants Dunn, Culliver, Stewart, Raybon, Mitchell, Fails, Kidd, Scarborough, and Vignolo are liable for excessive use of force, failure to protect, and assault and battery. Vincent has also alleged that Defendants Stewart, Raybon, Mitchell, Fails, Kidd, and Vignolo are liable for denial of medical care. Many of

Vincent's claims against these supervisory defendants are rooted solely in the theory of *respondeat superior* and are not actionable.

Under § 1983, holding a defendant liable solely for the actions of a subordinate or an employee is not recognized as a viable theory of liability. <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 691-92 (1978) (ruling that in a § 1983 action the city could not be held liable either vicariously or under the theory of *respondeat superior* for the acts of an employee). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009). Moreover, when the underlying actions of a subordinate or employee caused no constitutional harm, liability cannot be imposed on the supervisor, employer, or governmental entity for its allegedly related policy. <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986).

It is against this standard that Vincent's supervisory claims will be analyzed throughout this report.

### C.    Excessive Force.

The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, governs the use of force by prison officials against convicted inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999).  In order to establish an Eighth Amendment excessive force claim against the Defendants, Vincent must prove both an objective and subjective component.  That is, he must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and that the Defendants "act[ed] with a sufficiently culpable state of mind," i.e., that they acted "maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7-8; see also Lumley v. City of Dade City, Fla., 327 F.3d 1186, 1196 (11th Cir. 2003) (to satisfy the objective component, the plaintiff must show the complained of conduct "shocks the conscience").

"[W]here a prison security measure is undertaken to resolve a disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff, . . . the question [of] whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether the force was applied in a good

faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley, 475 U.S. at 320-21 (citation omitted); see also Skrtich, 280 F.3d at 1300. Factors relevant to this determination include "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Skrtich, 280 F.3d at 1300 (quoting Hudson, 503 U.S. at 7). When considering these factors, courts afford "a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (internal quotations omitted).

The record evidences that a hostile and insubordinate climate, equating to an inmate riot or revolt against the correctional officers, was rising up in B-Dorm in the days leading to the November 9, 2016 incident, and the need for some force was justified. It is clear that the CERT Team retreated from the initial confrontation (on November 7, 2016) and designed a plan to regain control of B-Dorm (on November 9, 2016). The CERT Team entered B-Dorm on November 9, 2016, not with chemical agents to affect the entire dorm,

but with a list of the weapon-yielding inmates and a goal of arresting those offenders and confiscating the contraband weapons. The CERT Team's decision to reenter B-Dorm in the early morning with an increased number of officers, and to zip tie all inmates within B-Dorm, further evidences the officers' intent to lower the threat and temper the amount of force used. Notably, other than the weapon-yielding offenders, only eleven other inmates were charged with a disciplinary action for failing to follow the direct orders of an officer, and those inmates were allowed to remain in general population. (See Doc. 31-2 at 32). Moreover, the record reflects that the arrested inmates suffered only minor injuries following the B-Dorm raid on November 9, 2016, evidencing the CERT Team's tactical control and lack of utilized force. Notably, the body charts of the arrested inmates reflect injuries and complaints ranging from "nothing" to redness, to sore ribs, to minor abrasions. (Id. at 3-29). Even Vincent claims only to have suffered "minor bruises". (Doc. 37 at 3).

In examining the evidence before it, however, the Court is presented with contradicting allegations, most notably, whether or not Vincent was even present in B-Dorm at the time of the November 9, 2016 incident. According to Defendants, Vincent was assigned to C-Dorm and was not present in B-Dorm

at the time of the incident and, therefore, no force was used on Vincent at all. (See Doc. 31 at 2-3; Doc. 31-3 at 2). On the other hand, Vincent acknowledges that he was assigned to C-Dorm but alleges he had permission from Officer Brown to be in B-Dorm and had resided in B-Dorm since October 26, 2016. (Doc. 37 at 1; see Doc. 31-3 at 2). The record before the Court does not blatantly contradict Vincent's claim; thus, his version of the facts must be credited at the summary judgment stage. Taking Vincent's version of the facts as true, none of the force used on him was necessary.

Given the facts of this action, viewed in the light most favorable to Vincent as the nonmovant, a reasonable jury could find that the CERT Team members acted maliciously or sadistically to cause harm to him, see Hudson, 503 U.S. at 6-8, find that such conduct shocks the conscience, see Lumley, 327 F.3d at 1196, and find the CERT Team Defendants liable for a constitutional violation. Because the Court cannot make credibility determinations on summary judgment, the Court cannot resolve the underlying dispute where Vincent's allegations are "not blatantly contradicted by other evidence in the record." See Bowden v. Stokely, 576 F. App'x 951, 954 (11th Cir. 2014); Miller v. Harget, 458 F.3d 1251, 1256 (11th Cir. 2006) ("Even if the district court believes that the evidence presented by one side is of doubtful veracity, it is

not proper to grant summary judgment on the basis of credibility choices."). Accordingly, the Court concludes that a jury question exists with respect to whether excessive force was utilized against Vincent during the November 9, 2016 incident; thus, it is recommended that Vincent's excessive force claim against the CERT Team member Defendants proceed.

However, as will be explained in detail *infra*, in Section G, recovery for this excessive force claim is restricted to nominal damages only.

Plaintiff Vincent also claims that Defendants Dunn, Culliver, Stewart, Raybon, Mitchell, Fails, Kidd, Scarborough, and Vignolo are liable for the use of excessive force against him. The record indicates, however, that Defendants Culliver, Raybon, and Scarborough were not present at Holman Correctional Facility during the time of the incident that is the subject of this complaint. (Doc. 31 at 3; Doc. 31-6 at 1; Doc. 31-8 at 1; Doc. 31-9 at 1). Officer Vignolo avers he was assigned to another dormitory at Holman during the time period the CERT Team entered B-Dorm on November 9, 2016 (Doc. 31-10 at 1), and Vincent confirms that Officer Vignolo entered B-Dorm *after* the incident. (Doc. 37 at 3). Lt. Kidd declares she was supervising the institutional count and assisting in institutional shakedowns

of female employees entering the facility at the time of the incident (Doc. 31-11 at 1), and Vincent does not contradict her assertion that she was not present in B-Dorm during the incident. Likewise, Vincent does not claim that Commissioner Dunn, Associate Commissioner Culliver, Warden Stewart, Warden Raybon, Warden Mitchell, or Officer Scarborough were present in B-Dorm at the time of the incident that is the subject of this complaint, nor does he allege that they personally used excessive force against him. (See Docs. 1, 37). Consequently, Vincent must, but fails to, show that there is a causal connection between the actions of these supervising officials and the alleged constitutional deprivation. Vincent's complaint is devoid of allegations that the supervisory Defendants enacted customs or policies that led to the alleged use of excessive force. The mere claim that these Defendants are "responsible for the Security of Holman Prison and ensuring that the laws, regulations, & Policies are followed and that the inmates are protected" or similar language (see Doc. 1 at 9-13), is insufficient to show that any Defendant enacted a custom or policy that was the "moving force" behind the use of excessive force. See Pinkney v. Davis, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) ("[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or

tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation."). Neither does Vincent allege facts to evidence or demonstrate that the type of force utilized by the CERT Team and the actions described in his complaint are commonplace or standard practice by the CERT Team or known to the supervising Defendants.

Consequently, Vincent has failed to allege facts sufficient to causally connect the named supervisory defendants to the alleged use of excessive force; thus, summary judgment should be granted in favor of Defendants Associate Commissioner Culliver, Warden Stewart, Warden Raybon, Warden Mitchell, Lieutenant Kidd, Officer Scarborough, and Officer Vignolo as to Vincent's excessive force claim.

### D. Denial of Medical Care.

The Eighth Amendment prohibits indifference to a convicted prisoner's serious medical needs so deliberate that it "constitutes the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal quotations omitted). "To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and

the plaintiff's injury." McDaniels v. Lee, 405 F. App'x 456, 458 (11th Cir. 2010) (citing Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009)). To satisfy the first objective element, Vincent must prove that his condition was, in fact, a serious medical need. "A serious medical need is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1317 (11th Cir. 2010) (internal quotations omitted). To satisfy the subjective element of a deliberate indifference claim, a prisoner must prove three things: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than [gross] negligence." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004); Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) (noting that subjective knowledge requires that the defendant "'must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* [ ] must also draw the inference'") (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)); see also Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010) (stating that, after Farmer, "a claim of deliberate indifference requires proof of more than gross negligence").

Plaintiff Vincent alleges that Defendants Stewart, Raybon, Mitchell, Fails, Kidd, Vignolo, Wall, and Langford failed to provide him with medical care in violation of the Eighth Amendment. (Doc. 1 at 10-14). It is indisputable, however, that Plaintiff Vincent did not suffer a serious medical need on November 9, 2016, as he plainly admits he had "minor bruises" and sought a body chart only to record the bruises. (Doc. 37 at 3-4). Additionally, the record indicates that at no time subsequent to the incident did Vincent seek medical treatment for injuries related to the November 9, 2016 incident. Since proof of deliberate indifference to a serious medical injury is Vincent's burden at trial, and there is no evidence that would support a finding of deliberate indifference or that the injury to plaintiff was serious, Defendants Stewart, Raybon, Mitchell, Kidd, Vignolo, Wall, and Langford are entitled to summary judgment, and Vincent's claim for denial of medical care against those Defendants should be dismissed.

**E. Failure to Protect.**

Vincent claims that the named CERT Team officers who entered B-Dorm on November 9, 2016, as well as supervisory officials Dunn, Culliver, Stewart, Raybon, Mitchell, Fails, Kidd, Scarborough, and Vignolo, failed to protect him, in

violation of the Eighth Amendment, from the excessive force used against him on November 9, 2016.

A prison official violates the Eighth Amendment when he or she acts with deliberate indifference to a substantial risk of serious harm to an inmate. Farmer, 511 U.S. at 828. "[A]n officer who is present at the scene [of an altercation] and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance." Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008) (quoting Velazquez v. City of Hialeah, 484 F.3d 1340, 1341 (11th Cir. 2007)). But, an officer may be liable for failing to protect only if the officer was in a position to intervene, yet failed to do so. Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000).

As to the CERT Team Defendants, as previously discussed, it is unclear whether or not excessive force was used against Vincent on November 9, 2016. Similarly, it cannot be determined whether or not the named CERT Team Defendants were present and able to reasonably protect Vincent. Therefore, Vincent's failure to protect claim against the CERT Team Defendants (McQuirter, Fountain, Bullard, Smith, J. Pryor, J. Staniford, S. Terry, D. Whitley, D. Dennis, J. Griffin, B. Walker, Duren, W. Streeter, Arthur, J. Baldwin, Lewis,

Fleeton, Harrison, Robinson, Snelson, Brown, Edmund, Parker, J. Wilson, Knight, Mixon) must proceed in this action.

As to the supervisory Defendants, Vincent has failed to plead any facts indicating that any supervisory Defendant was present in B-Dorm on November 9, 2016 or was in a position to reasonably act to protect him. Vincent's complaint is further devoid of facts evidencing that any supervisory Defendant ordered excessive force to be used by the CERT Team or was aware that the CERT Team entered B-Dorm with the intent to use excessive force against Vincent. Consequently, Vincent has failed to establish that Defendants Culliver, Stewart, Raybon, Mitchell, Kidd, Scarborough, and Vignolo failed to protect him on November 9, 2016. It is, therefore, recommended that summary judgment be granted in favor of Defendants Culliver, Stewart, Raybon, Mitchell, Kidd, Scarborough, and Vignolo on Vincent's failure to protect claims.

### F. Assault and Battery.

Vincent asserts state law claims of assault and battery against the correctional officer Defendants. As discussed *supra,* there remains a question of material fact as to whether or not excessive force was used against Vincent. Similarly, there remains a question as to whether the CERT Team Defendants are liable for state law assault and battery

claims.  Out of an abundance of caution, it is recommended that the state law claims of assault and battery be carried along with the alleged Eighth Amendment violations against the CERT Team Defendants.

It is further recommended that the state law claims of assault and battery be dismissed against the supervisory Defendants for the reasons previously discussed in Sections III. B., C., and E, and that summary judgment be granted in favor of Defendants Culliver, Stewart, Raybon, Mitchell, Kidd, Scarborough, and Vignolo on those claims.

**G.    Limitation on Recovery.**

Vincent seeks punitive damages as a result of Defendants' conduct, "and any other relief as the law and this Court deem just." (Doc. 1 at 17).  Pursuant to 42 U.S.C. § 1997e(e), Vincent may not recover punitive damages because, at most, his physical injuries were *de minimis* in nature.  42 U.S.C. § 1997e(e), which is entitled "Limitation on recovery," provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . ."  42 U.S.C § 1997e(e).

Section 1997e(e) was enacted by Congress "[i]n an effort to stem the flood of prisoner lawsuits in federal court[.]"

*Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000), <u>cert.</u> <u>denied</u>, 532 U.S. 1065 (2001). By enacting this section, Congress chose to "preclude[] some actions for money damages[,]" <u>Harris v. Garner</u>, 190 F.3d 1279, 1288 (11th Cir. 1999), <u>opinion vacated by</u> 197 F.3d 1059, <u>opinion reinstated</u> <u>in part by</u> 216 F.3d 970 (11th Cir. 2000), and "to enforce prisoners' constitutional rights through suits for declaratory and injunctive relief," <u>Harris</u>, 190 F.3d at 1289, and nominal damages, <u>Brooks v. Warden</u>, 800 F.3d 1295, 1307-09 (11th Cir. 2015). Section 1997e(e) applies "only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." <u>Napier v. Preslicka</u>, 314 F.3d 528, 532 (11th Cir. 2002), <u>cert. denied</u>, 540 U.S. 1112 (2004). The mental or emotional injury does not need to be pled in order for the statute to be applicable. <u>Al-Amin v. Smith</u>, 637 F.3d 1192, 1197 & n.5 (11th Cir. 2011) (stating that a contrary holding would give talismanic importance to a prisoner's pleading or not pleading of mental or emotional injury and lead to illogical results). Thus, in order to avoid dismissal of claims for compensatory and punitive damages under § 1997e(e), a prisoner's claim "must be accompanied by allegations of physical injuries that are greater than de

minimis." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002).

In this action, Vincent requested $150,000 in punitive damages from each Defendant for his pain and suffering, a declaratory judgment for violations of the Eighth Amendment, injunctive relief, and any other relief deemed just by the Court. (Doc. 1 at 17). Vincent has identified "minor bruises" as the only physical injuries that he suffered; thus, this action comes within the scope of 42 U.S.C. § 1997e(e), which requires that, in order to recover compensatory and punitive damages, a prisoner must have sustained a physical injury that is greater than *de minimis*. Cf. Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (finding a sore, bruised ear which lasted for three days was *de minimis*); Quinlan v. Pers. Transp. Servs. Co., LLC, 329 F. App'x 246, 249 (11th Cir. 2009) (finding that an asthmatic prisoner's claims for compensatory and punitive damages for "temporary chest pain, headache, and difficulty breathing" due to a smoky smell in the transportation van did not show that an injury greater than *de minimis* was suffered); Tate v. Rockford, 497 F. App'x 921, 925 (11th Cir. 2012) (finding an inmate's "laceration on his forehead, several small abrasions and cuts, and a swollen right eye" to be *de minimis*), cert. denied, 569 U.S. 931 (2013); Oliver v. Gafford, 2018 U.S.

31

Dist. LEXIS 69599, at *33-34, 2018 WL 1938308, at *13 (N.D.
Fla. Jan. 19, 2018) (finding that slight swelling to the thumb
which required no medical attention was *de minimis*), report
and recommendation adopted, 2018 U.S. Dist. LEXIS 68622, 2018
WL 1937072 (N.D. Fla. Apr. 24, 2018); Hollingsworth v. Thomas,
2014 U.S. Dist. LEXIS 73556, at *10-11, 2014 WL 2435763, at
*4 (S.D. Ala. May 30, 2014) (finding that an inmate had a *de
minimis* injury from being struck twice on his hand and fingers
with an extendable riot baton that caused him to receive pain
medication and to have his wrist wrapped).

A careful review of Vincent's allegations does not
convey that he suffered a physical injury that was greater
than *de minimis*. Because Vincent did not suffer a physical
injury that was greater than *de minimis*, his claims for
punitive damages against the Defendants arising out of the
incidents set forth in the complaint are due to be dismissed
without prejudice pursuant to 42 U.S.C. § 1997e(e) for failure
to state a claim upon which relief can be granted. See
Harris, 216 F.3d at 980 ("[D]ismissal under this statutory
provision of a claim that is filed during confinement should
be without prejudice to re-filing the claim if and when the
plaintiff is released.").

However, the Supreme Court has recognized that "[a]n
inmate who is gratuitously beaten by guards does not lose his

ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38-39 (2010) (stating that the "core judicial inquiry" for an excessive force claim under the Eighth Amendment is not based on the extent of the plaintiff's injury, but rather on "the nature of the force" used, i.e., "whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm'") (citation omitted). Accordingly, a plaintiff claiming a violation of his constitutional rights is entitled to nominal damages "even if he cannot prove actual injury sufficient to entitle him to compensatory [or punitive] damages." Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003); see also Graham v. Elliott, 2018 U.S. Dist. LEXIS 126886, at *11, 2018 WL 3625863, at *4 (N.D. Fla. June 27, 2018) (stating that nominal damages "are typically limited to $1.00 in the Eleventh Circuit"), report and recommendation adopted, 2018 U.S. Dist. LEXIS 126565, 2018 WL 3622810 (N.D. Fla. July 30, 2018).

Although Vincent's request for punitive damages of $150,000.00 from each Defendant (thus totaling in the millions) is inconsistent with a request for nominal damages, he did request "any other relief as the law and this Court deem just." (Doc. 1 at 17). Such a general prayer for relief could be construed as a request for nominal damages.

33

Accordingly, Vincent's complaint should not be dismissed. See Magwood v. Sec'y, Fla. Dep't of Corr., 652 F. App'x 841, 845 (11th Cir. 2016) ("Although [the *pro se* plaintiff's] complaint did not specifically request nominal damages, he did request appropriate relief generally, and the district court should consider whether nominal damages are available under his original complaint."), cert. denied sub nom., Magwood v. Jones, 137 S. Ct. 675 (2017).

Consequently, Vincent's claim against any remaining Defendants should proceed for nominal damages.

### H. Request for Declaratory and Injunctive Relief.

In addition to monetary relief, Vincent requests a declaratory judgment and injunctive relief. (Doc. 1 at 17). A remedy for declaratory relief is created by 28 U.S.C. § 2201(a), which provides that "[i]n a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Declaratory relief is by its nature prospective." McGee v. Solicitor Gen. for Richmond Cnty., Ga., 727 F.3d 1322, 1325 (11th Cir. 2013). That is, it is "[i]n contrast . . . [to] a claim for money damages [that] looks back in time and is intended to redress a past injury." Adler v. Duval Cnty. Sch. Bd., 112

F.3d 1475, 1477 (11th Cir. 1997). Thus, to have standing to seek declaratory relief, a plaintiff "'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" Koziara v. City of Casselberry, 392 F.3d 1302, 1305 (11th Cir. 2004) (quoting Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1265 (11th Cir. 2001)). "[T]he continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985). A remote possibility of a future injury occurring is not adequate to meet the "actual controversy" requirement for declaratory relief. Id. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Ciudadanos Unidos de San Juan v. Hidalgo Cnty. Grand Jury Comm'rs, 622 F.2d 807, 821-22 (5th Cir. 1980), cert. denied, 450 U.S. 964 (1981).

Vincent has not made a specific showing (or even an allegation) that there is any likelihood he will be subjected to unlawful conduct by a named Defendant in the future. See City of Los Angeles v. Lyons, 461 U.S. 95, 104 (1983) (merely asserting that one may again be subject to unlawful conduct does not generally give rise to standing to demand prospective relief). Thus, Vincent's claim for declaratory relief fails

"to satisfy the threshold 'case or controversy' requirement of article III and the 'actual controversy' prerequisite of 28 U.S.C. § 2201" and, therefore, is subject to dismissal. See Emory, 756 F.2d at 1552.

Similarly, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief if the party alleges . . . a real and immediate – as opposed to a merely conjectural or hypothetical - threat of *future* injury." Church v. City of Huntsville, 30 F. 3d 1332, 1337 (11th Cir. 1994) (emphasis in original). A review of Vincent's complaint reveals no allegation or claim of future harm. Accordingly, Vincent's claim for injunctive relief is due to be dismissed.

**IV.  Notice of Judgment Independent of the Motion.**

Rule 56 of the Federal Rules of Civil Procedure permits the Court, after it has given notice and a reasonable time to respond, to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). Thus, by filing this Report and Recommendation, the Court notifies Plaintiff Vincent of its intention to consider a recommendation to the District Judge that she enter summary judgment, *sua sponte*, in favor of Defendants Jefferson Dunn

and Captain Darryl Fails on the claims raised against them in this action.

As discussed previously, Plaintiff Vincent alleges that Defendants Dunn and Fails are liable for the use of excessive force, failure to protect, and assault and battery. (Doc. 1 at 9, 12). Vincent further claims that Defendant Fails is liable for denying him medical care. (Id. at 12). These exact claims were also asserted against supervisory Defendants Culliver, Stewart, Raybon, Mitchell, Scarborough, Kidd, and Vignolo. In an effort to determine whether or not Vincent has carried his burden in establishing a constitutional claim against Defendants Dunn and Fails, the undersigned has analyzed the aforementioned claims and concluded that there is no cognizable claim pursuant to § 1983 against these Defendants. For the reasons stated in this report, after a review of all relevant facts, it is recommended that summary judgment be entered on behalf of Defendants Dunn and Fails and that all claims against them be dismissed.

However, Defendant Dunn has yet to be served with the complaint, and Defendant Fails has yet to answer the complaint; thus, they are not parties to the motion for summary judgment. Given that Vincent presents no additional allegations and provides no differing facts as to his claims

against these Defendants than those that have been analyzed *supra*, the Court determines that its findings of facts and conclusions of law regarding the claims presented against Defendants Dunn and Fails would be essentially identical to those discussed in this report. Accordingly, Plaintiff Vincent is hereby put on notice by this report and the analysis of his claims of the Court's intention to consider summary judgment in favor of Defendants Dunn and Fails.

Accordingly, within the fourteen days provided for filing objections to this Report and Recommendation, Plaintiff Vincent shall show cause, in writing, why the Court should not enter summary judgment pursuant to Rule 56(f)(3) of the Federal Rules of Civil Procedure in favor of Defendants Dunn and Fails on Plaintiff's 42 U.S.C. § 1983 claims.

In responding to this notice, Vincent should refer to Fed. R. Civ. P. 56, including the following provision:

> A party asserting that a fact . . . is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot

> produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Vincent cannot rely only on his unsworn pleadings but must respond to this notice by filing sworn affidavits, depositions, or other materials set forth in Rule 56(c)(1)(A) — or by citing such evidence already of record in this matter — which set forth facts presented in a form that would be admissible evidence demonstrating that there is a genuine dispute as to a material fact for trial in this case. If Vincent fails to file sworn affidavits or other acceptable evidence as set forth in Rule 56, the Court will accept the evidence identified above as undisputed for purposes of evaluating whether the Court should grant summary judgment in the Defendants' favor. See Fed. R. Civ. P. 56(e). Vincent's failure to follow the requirements of Rule 56(c)(1)(A) in opposing the proposed summary judgment could result in a recommendation from the undersigned Magistrate Judge to the presiding District Judge that she enter summary judgment in the favor of Defendants Jefferson Dunn and Darryl Fails and enter final judgment as to these Defendants in this case without a trial.

## V. Conclusion.

Plaintiff Vincent has failed to show an Eighth Amendment constitutional violation on the part of the Defendants

Associate Commissioner Grantt Culliver, Warden Cynthia Stewart, Warden Terry Raybon, Warden Mitchell, Lieutenant Ashley Kidd, Officer Gary Scarborough, Officer Timothy Vignolo, Nurse Ashley Wall, and Nurse Jonathan Langford. Based on the foregoing, the undersigned recommends that summary judgment be **GRANTED** in favor of these Defendants (**Associate Commissioner Grantt Culliver, Warden Cynthia Stewart, Warden Terry Raybon, Warden Mitchell, Lieutenant Ashley Kidd, Officer Gary Scarborough, Officer Timothy Vignolo, Nurse Ashley Wall, and Nurse Jonathan Langford**), and that Plaintiff Vincent's action against these Defendants be **DISMISSED** with prejudice.

Additionally, Plaintiff is hereby placed on **Notice** by the filing of this Report and Recommendation of the Court's **intention to recommend the granting of summary judgment for Defendants Jefferson Dunn and Darryl Fails**, who have either not yet been served with or have not answered Plaintiff's complaint to date. Vincent is afforded the opportunity to include within any objections he has to this Report and Recommendation any reasons that should preclude the entry of summary judgment on behalf of Defendants Jefferson Dunn and Darryl Fails.

Furthermore, it is recommended that Vincent's claims of excessive force, failure to protect, and assault and battery

**against CERT Team Defendants McQuirter, Fountain, Bullard, Smith, J. Pryor, J. Staniford, S. Terry, D. Whitley, D. Dennis, J. Griffin, B. Walker, Duren, W. Streeter, Arthur, J. Baldwin, Lewis, Fleeton, Harrison, Robinson, Snelson, Brown, Edmund, Parker, J. Wilson, Knight, and Mixon should proceed.**

The instructions below contain important information regarding objections to the Report and Recommendation of the Magistrate Judge.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the

court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **13th** day of **August, 2019.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**